IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT JACKSON AND DEBRA JACKSON,

PLAINTIFFS,

v.

LITTON LOAN SERVICING, LP,

DEFENDANT.

CASE NO. 3:09-cv-1165-MEF (WO)

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant's Notice of Removal filed on December 23, 2009 (Doc. #1), and the Plaintiffs' Motion to Remand filed on January 22, 2010. (Doc. # 10). The Defendant seeks to remove this case from the Circuit Court of Russell County, Alabama pursuant to 28 U.S.C. § 1441(a) contending that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). (Doc. #1). The Plaintiffs oppose federal jurisdiction in this case and move to remand the case back to the Circuit Court of Russell County, Alabama. In support of their Motion to Remand, the Plaintiffs assert that the amount-in-controversy specification necessary to confer jurisdiction on this Court pursuant to § 1332(a) has not been met. After careful consideration of the applicable law and the arguments of counsel on the issues raised by the motion to remand, the Court finds that the motion to remand is due to be GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the Plaintiffs' complaint filed on July 14, 2009 in the Circuit Court of Russell County, Alabama alleging that the Defendant, Litton Loan Servicing, LP (Litton), committed fraud and misrepresentation. More specifically, the Plaintiffs allege that Litton improperly charged the Plaintiffs fees (including fees for default and late payment), misapplied payments made by the Plaintiffs to Litton, and, as a result of Litton's alleged mishandling of funds, caused the Plaintiffs to enter into repayment plans where the Plaintiffs were subject to more fees and wrongfully threatened foreclosure. (Doc. #1-10). The Plaintiffs claim that Litton did not disclose the existence of such fees to the Plaintiffs prior to the closing of the Plaintiffs' loan. The Plaintiffs' complaint seeks an unspecified amount of compensatory and punitive damages, court costs, and "such other and further relief" as determined by the judge or jury. (Doc. #6).

On December 3, 2009, Plaintiff Robert Jackson (Mr. Jackson) provided deposition testimony in a case filed by James and Sharon Billins against Litton in the Circuit Court of Barbour County, Alabama. It is uncontested that the parties to this present action understood that Mr. Jackson's deposition in the Billins case would be used as the primary deposition for him in his own case against Litton. (Doc. #14, 2, n. 1). A portion of Mr. Jackson's deposition testimony reads as follows:

Q: All right. How much money do you want from Litton?

MR. ROBERTSON (counsel for plaintiff): Object to the form. You can answer if you know.

A: To me, that's like a loaded question. The reason I say that, I would like for them to pay for my damages as well as the money that I feel like that was owed to me due to the circumstances as much as possible.

Q. How much do you think you've been damaged?

A. I really can't put a price tag on it. Because it's no way that Litton can pay me for the hours that I lost sleep. I think with the contributing factor to me getting stomach ulcers, anxiety eating. I lost time from work somewhat because I had to go back and forth trying to secure money funds to come up with – to keep from losing my house. How do you put a price tag on that?

Q. Do you want a hundred thousand dollars?

A. It wouldn't hurt my feelings none.

Q. Do you want that much money in this case?

MR. ROBERTSON: Object to the form.

Q. Do you want that much money in the lawsuit you have filed?

A. I don't think I can answer that question.

Q. Why not?

A. Why not? You are an attorney. I'm not.

Q. I'm asking how much you want. I'm not asking you how much a jury is going to give you. How much do you want in this lawsuit that you filed?

MR. ROBERTSON: I'm going to object to the form. He's asked and answered. You can answer it again.

A. Okay. I want a hundred and twenty thousand dollars. I want the property value of my house.

Q. And you believe your house is worth a hundred and twenty thousand dollars?

A. That's the last appraisal, it was.

Q. Does that include the real property?

A. Yes. That's what Litton was trying to take from me.

(Doc. #11-1, 1-2).

On December 23, 2009, following the deposition of Mr. Jackson, Litton filed a Notice of Removal asserting subject matter jurisdiction in this Court pursuant to 28 U.S.C. § 1332(a). (Doc. # 1). Litton's Notice of Removal was timely because it was filed within 30 days of Mr. Jackson's deposition testimony which Litton claims establishes that the amount in controversy in this case exceeds the $75,000 jurisdictional amount. *See* 28 U.S.C. § 1446(b). The Plaintiffs' Motion to Remand does not challenge the diversity of citizenship or the timeliness of Litton's removal. Rather, the Plaintiffs' sole contention in opposing federal jurisdiction is that the amount in controversy in this case does not exceed $75,000 as required by statute. (*Id.* at 2).

In support of its claim that the amount in controversy in this case necessarily exceeds $75,000, Litton makes three arguments: (1) Mr. Jackson testified at his deposition that he wants $120,000 in his case; (2) other Alabama courts have routinely entered verdicts in excess of $75,000 in similar cases; and (3) the Plaintiffs' failure to stipulate as to whether damages will exceed the jurisdictional amount is evidence in support of the assertion that the amount in controversy exceeds $75,000. (Doc. #1, 2-5). For their part, the Plaintiffs argue (1) that Mr. Jackson's testimony was not an accurate statement of the amount in controversy but rather constituted merely negotiation posturing; (2) that this Court should not consider

past jury awards to determine the amount in controversy in this case; and (3) that the Plaintiffs did not fail to stipulate, but rather sufficiently and completely responded to requests for admissions and also provided reasons why they could not admit or deny certain requests. (Doc. #11, 7-11). The Plaintiffs also argue that claims of multiple plaintiffs cannot be aggregated to satisfy the amount-in-controversy requirement of federal diversity jurisdiction. (Doc. #15-2, 4).

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *Kokkonen*, 511 U.S. at 377.

Among the cases over which a federal district court may exercise subject matter jurisdiction are civil actions in which only state law claims are alleged if the civil action arises under the federal court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). The diversity statute confers jurisdiction on the federal courts in civil actions "between citizens of different states," in which the jurisdictional amount, currently in excess of $75,000 exclusive of interest and costs, is met. *Id.*

When a case is originally filed in state court, a party may remove it to federal court if the case originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a).

*Accord, Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1207 (11th Cir. 2007). However, the non-moving party may move for remand, which will be granted if "it appears that the district court lacks subject matter jurisdiction." *See* 28 U.S.C. § 1447(c). The burden is on "the party seeking a federal venue" to "establish the venue's jurisdictional requirements" and therefore a removing defendant bears that burden in the context of a plaintiff's motion to remand. *Lowery*, 483 F.3d at 1207. Because removal jurisdiction raises significant federalism concerns, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095. Accordingly, Litton, as the removing party, bears the burden of demonstrating the jurisdictional amount.

Recently the Eleventh Circuit Court of Appeals provided significant clarification of "existing principles of law governing removal generally - who bears the burden of establishing that removal is proper, how that party can satisfy its burden, and how a district court must proceed in evaluating its jurisdiction after removal." *Lowery*, 483 F.3d at 1187. Although *Lowery* arose in the context of a removal pursuant to the Class Action Fairness Act of 2005 ("CAFA"), it is plain from the text of *Lowery* that the holdings of the case are not limited solely to cases removed under CAFA. In *Lowery*, the Eleventh Circuit reiterated that in cases, such as this one, where the complaint does not specify the amount of damages sought, "the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Id.* at 1208-10. The court cautioned, however, that "[i]f the

jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. If not, the court must remand. Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate." *Id.* at 1211.

The Eleventh Circuit has recently provided clarification regarding the kinds of documents a federal court may consider when evaluating a notice of removal. In *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010), the Eleventh Circuit held that a party seeking to remove a case to federal court pursuant to the first paragraph of § 1446(b) was not restricted in the types of evidence it may use to satisfy the jurisdictional requirements for removal. *Pretka*, 608 F.3d at 770-71.

The Eleventh Circuit in *Pretka* clearly stated that it was dealing with a case being removed under the first paragraph of § 1446(b). *Id.* at 747. In contrast, the Defendant in this case seeks removal under the second paragraph of § 1446(b). The notice of removal came on December 23, 2009 - approximately five months after the Plaintiff's initial pleading in state court. (Doc. #1, 5, 6). Because the Defendant seeks to remove this case based on the second paragraph of § 1446(b), the *Pretka* decision does not control the types of evidence that the Defendant may present in favor of its removal. This is because cases removed under the second paragraph of § 1446(b) are still governed by *Lowery*. Until the Eleventh Circuit changes the rule set forth in *Lowery*, this Court will continue to apply it when considering a notice of removal under the second paragraph of § 1446(b).

The *Lowery* court stated that, "in assessing the propriety of removal, the court considers the documents received by the defendant from the plaintiff - be it the initial complaint or a later received paper - and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Id.* at 1213; *See* 28 U.S.C. 1446(b) (stating that the district court can look to "other paper" received by the defendant to determine whether or not a case is removable).

The Eleventh Circuit in *Lowery* explained that "[c]ourts have not articulated a single test for identifying 'other paper'" on which a court may properly rely in determining jurisdiction, but "numerous types of documents have been held to qualify." *Lowery*, 483 F.3d at 1213, n. 62 (citing cases). Included among the types of "other paper" are deposition testimony and settlement offers. *Id.*; *see also Seroyer v. Pfizer, Inc.*, 991 F. Supp. 1308, 1314 (M.D. Ala. 1997) ("in addition to reviewing the face of the complaint, the court may also consider plaintiffs' . . . deposition testimony.").

**III. DISCUSSION**

Similar to the situation in *Lowery*, the Plaintiffs' state court complaint in this case seeks an unspecified amount of damages. In the prayers for relief following each count, the Plaintiffs seek "compensatory damages and punitive damages, court costs, and such other and further relief" which a jury or the court may award. (Doc. #1, Exh. 2, 3-11). Absent any specified amount in the complaint, Litton, in an effort to carry its burden of showing that the amount in controversy exceeds $75,000, points this Court to: (1) deposition testimony by one

of the Plaintiffs; (2) other jury awards for similar cases in state court; and (3) Litton's requests for admissions and the Plaintiffs' responses to such requests.

The Court finds that the deposition testimony of Plaintiff constitutes "other paper" under *Lowery* which the Court may properly consider when determining whether the amount-in-controversy component of federal diversity jurisdiction has been satisfied. Mr. Jackson's deposition testimony sets forth the value of the Plaintiffs' claim and constitutes sufficient non-speculative evidence as to the amount in controversy in this case. *See Lowery*, 483 F.3d at 1215. Accordingly, the Court finds that the amount in controversy in this case is $120,000 as indicated in Mr. Jackson's deposition.

In order to give full effect to Litton's argument in favor of removal, the Court will address Litton's other two asserted bases for establishing the requisite amount in controversy. Litton argues that Alabama state court awards for punitive and mental anguish damages have at other times exceeded the amount-in-controversy threshold necessary for federal jurisdiction. (Doc. #1, 4). Litton argues that these awards are "further evidence that the amount in controversy in this litigation exceeds $75,000." (*Id.*). However, reliance on state court awards in purportedly similar cases is disfavored in this Circuit. Indeed, the *Lowery* court specifically rejected a removing defendant's attempt to satisfy its burden of proving the amount in controversy by reference to jury verdicts in other purportedly similar cases. *See Lowery*, 483 F.3d at 1220-21. That court refused to consider the defendant's reference to the other cases because it did not constitute evidence received from the plaintiffs, "but rather was

gathered from outside sources." *Id.* (citing 28 U.S.C. § 1446). The court went on to state that "[e]ven if the defendants had received the evidence of other suits from the plaintiffs, we question whether such general evidence is ever of much use in establishing the value of claims in any one particular suit." *Id.*; *see also Alexander v. Captain D's, LLC*, 437 F. Supp. 2d 1320, 1322 (M.D. Ala. 2006) ("[s]ome juries may have awarded damages beyond the jurisdictional limit for similar causes of action, but that does not prove that a jury would award more than $75,000 on the particular facts of this case."). Indeed, as in *Lowery*, the value of the awards in the cases cited to this Court by Litton reveal very little about the value of the claims in this lawsuit. Therefore, the Court rejects Litton's argument that the amount in controversy can be proven by reference to jury awards in purportedly similar state court cases.

Lastly, Litton argues that the Plaintiffs' refusal to stipulate to an amount in controversy is evidence that the amount in controversy exceeds $75,000. Litton's also contends that the Plaintiffs have refused to respond to the Litton's interrogatories. These arguments are unpersuasive. Although it is true that the Plaintiffs did not stipulate to an amount when responding to Litton's interrogatories, it is not true that the Plaintiffs have refused to respond in a meaningful way. And while the Plaintiffs' responses may not have been what Litton had hoped for, the Plaintiffs' responses were still valid because they objected to each request, stated the objection, and set forth reasons why the Plaintiffs could not admit or deny the requests. *See* Ala. R. Civ. P. 36(a). Further, the Plaintiffs' failure to

stipulate to an amount has little if any probative value for determining the amount in controversy. As this Court has previously held, a refusal to stipulate to an amount in controversy in response to an interrogatory does not result in an admission regarding the amount in controversy. *Harmon v. Wal-Mart Stores, Inc.*, 2009 WL 707403 at *4 (M.D. Ala. 2009) ("Defendant cannot create an end-run around the jurisdictional requirements by forcing a denial of a negative and then claim the positive is admitted and conclusively determined."). Consequently, the jurisdictional amount was not established by the Plaintiffs' refusal to stipulate to an amount when responding to Litton's interrogatories.

Having determined that Litton's other two arguments regarding the amount in controversy provide no additional insight as to the value of the current case, the Court returns to its finding from Mr. Jackson's deposition testimony that the amount in controversy is $120,000.

Even though the Court has found that the amount in controversy is $120,000, because this case involves multiple plaintiffs, this Court's analysis does not stop there. Generally, to satisfy the amount-in-controversy requirement at least one plaintiff's claim must independently meet the amount-in-controversy specification. *See Lowery*, 483 F.3d at 1198 n. 31 (citing *Exxon Mobil v. Allapattah Svcs., Inc.*, 545 U.S. 546 (2005) for the proposition that if the claims of a single plaintiff meet the jurisdictional threshold the court may assert supplemental jurisdiction over additional plaintiffs' claims). Alternatively, while courts have generally refused to permit the claims of multiple plaintiffs to "be aggregated in order to

satisfy the jurisdictional amount requirement," aggregation of claims by multiple plaintiffs against a single defendant is permitted where two or more plaintiffs unite to enforce a single title or right in which the plaintiffs have a common undivided interest. *See Snyder v. Harris*, 394 U.S. 332, 335 (1969); *Hall v. ITT Fin. Svcs.*, 891 F. Supp. 580, 582 (M.D. Ala. 1994) ("Multiple plaintiffs may aggregate their claims only if they seek to enforce a single title or right in which they have a common and undivided interest.").

Therefore, the Court must determine whether Litton has shown by a preponderance of the evidence either (1) that at least one Plaintiff's claim independently meets the amount-in-controversy specification, or (2) that the Plaintiffs' claims may be lawfully aggregated to satisfy the amount-in-controversy specification. If Litton cannot carry this burden, then the Court must grant the Plaintiffs' motion to remand.

The Court first addresses whether any one claim is sufficient to meet the amount-in-controversy specification. Aside from the pleadings, the only evidence currently before the Court that provides any insight for resolving this question is Mr. Jackson's deposition testimony. At the deposition, Mr. Jackson was asked, "[h]ow much do you want in this law suit that you filed," to which he ultimately responded, "I want a hundred and twenty thousand dollars. I want the property value of my house." (Doc. #1, Exh. B, 5). Litton claims that Mr. Jackson's testimony provides unambiguous evidence of the amount in controversy. (Doc. #14, 5). However, absent any further context to clarify Mr. Jackson's response, the Court is left with the uncertainty as to whether Mr. Jackson's desire to receive $120,000 in this case

represented the amount of Mr. Jackson's individual claim or whether it represented the amount of the combined claims of both Mr. and Mrs. Jackson. However, if $120,000 is the amount of Mr. Jackson's individual claim, then the amount-in-controversy specification is met and jurisdiction in this Court is proper. If $120,000 is the combined amount of the claims, then there is uncertainty as to how much of the amount is attributable to Mr. Jackson's claim and how much is attributable to Mrs. Jackson's claim. There is further uncertainty as to whether either one of the individual claims exceeds $75,000 as required by statute to establish federal jurisdiction.

Fortunately, this Court need not speculate as to the answers to these questions. In this Circuit "the absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Lowery*, 483 F.3d at 1214. Consequently, because Litton seeks to remain in federal court and has the burden to establish the jurisdictional requirements, uncertainty must be construed against it. *See Burns*, 31 F.3d at 1095 ("removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."); *Lindsey v. Ala. Tel. Co.*, 576 F.2d 593, 595 (5th Cir. 1978) (noting that it is not "open to the district court to speculate" on whether the jurisdictional facts existed).[1] Therefore, this Court finds that Litton has not carried its burden to

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit entered prior to the close of business on September 30, 1981).

demonstrate by a preponderance of the evidence that one of the Plaintiffs' claims exceeds the requisite jurisdictional amount.

Finally, this Court examines whether the Plaintiffs' claims can be lawfully combined to meet the jurisdictionally requisite amount. To do this, the Court must determine whether the Plaintiffs' claims are separate and distinct or whether the Plaintiffs have a common and undivided interest in the subject matter of the litigation. *See Snyder*, 394 U.S. at 335 (1969) (holding that aggregation is permissible to meet the amount-in-controversy requirement where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest."); *Davis v. Carl Cannon Chevrolet-Olds, Inc.*, 182 F.3d. 792 (11th Cir. 1999) (citing *Snyder*, *supra*, for the same proposition).

The determination of "the value of the matter in controversy for purposes of federal subject matter jurisdiction is a federal question to be decided under federal standards." *See, e.g., Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352 (1961). However, in a diversity case such as this one, a federal court "must look to state law to determine the nature and extent of the right that the plaintiff is seeking to have enforced." *Id.* at 352-53.

According to the Plaintiffs' complaint, the Plaintiffs executed a note and mortgage on property located at 97-A Ware Road in Phenix City, Alabama. (Doc. #1-5, 2). The note and mortgage were serviced by Litton. (*Id.*). Further, it appears from the deposition that Mr. Jackson is the owner of certain real property upon which the mobile home subject to the mortgage serviced by Litton was located. (Doc. #11-1, 1-2). The Plaintiffs' suit arises out of

the execution and performance of the note and the mortgage. However, the record does not contain the note nor the mortgage nor any records of ownership describing the contours of the Plaintiffs' obligations on the note or mortgage or ownership interests in any collateral. Accordingly, the Court is left with uncertainty as to the nature and extent of the right that the Plaintiffs are seeking to enforce.

This uncertainty aside, it is certain from the record that Litton has not pointed this Court to any authority indicating that claims like the Plaintiffs' may be lawfully joined to meet the amount-in-controversy requirement. In fact, neither Litton's Notice of Removal (Doc. #1) nor its Response in Opposition to Motion to Remand (Doc. #14) even address this point of aggregation of claims. While the Court is mindful that determining whether an interest is common and undivided as opposed to separate and distinct is a difficult task, it is nevertheless a task that Litton needed to undertake in order to carry its burden of establishing federal jurisdiction. *See generally*, 14AA Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3704 (Supp. 2009). Accordingly, Litton has not succeeded in carrying its burden of establishing that the Plaintiffs' claims could be lawfully aggregated to satisfy the amount-in-controversy specification.

As a final comment, the Court reiterates that the facts currently before it are uncertain regarding the apportionment of the amount in controversy in this case and the nature of the right the Plaintiffs seek to enforce. This uncertainty prevents the Court from asserting subject matter jurisdiction at this time. Nevertheless, if additional facts are presented to the

Court which, for example, establish that the joint amount sued upon is in excess of $150,000 or that the right the Plaintiffs seek to enforce is a common and undivided interest, then the Court may entertain an additional notice of removal.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. The Plaintiffs' Motion to Remand (Doc. # 10) is GRANTED.

2. This case is REMANDED to the Circuit Court of Russell County, Alabama.

3. The Clerk is DIRECTED to take appropriate steps to effect the remand.

4. All motions other than the Motion to Remand are left for resolution by the Circuit Court of Russell County after remand.

DONE this the 10th day of August, 2010.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE